**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------X

DANIEL HUNSBERGER, MATTHEW KRAISKY, and KEVIN OSIKA, individually and on behalf of all others similarly situated,

Plaintiffs,

-against-

COUNTY OF PUTNAM,

Defendants.

-----------------------------------------------------------X

Case No. 7:26-cv-01024-KMK

**FIRST AMENDED COLLECTIVE ACTION COMPLAINT**

**Jury Trial Demanded**

Plaintiffs Daniel Hunsberger ("Hunsberger"), Matthew Kraisky ("Kraisky"), and Kevin Osika ("Osika") (collectively, "Plaintiffs") allege on behalf of themselves and all others similarly situated, against Defendant County of Putnam ("the County" or "Defendant"), upon information and belief, as follows:

## NATURE OF THE CLAIMS

1. Plaintiffs are law enforcement officers employed by Defendant—the County of Putnam—as members of the Putnam County Sheriff's Department ("PCSD").

2. Plaintiffs complain, on behalf of themselves and all others similarly situated, pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.*, ("FLSA") that the County maintained a pattern and practice of failing to pay them and other non-exempt employees, including current and former employees at the PCSD holding the title of Deputy Sheriff ("Deputy"), Deputy Sheriff Sergeant ("Sergeant"), Deputy Sheriff Investigator ("Investigator"), Senior Investigator, and First Sergeant, overtime wages at the rate of one-and-one half (1 ½) times the regular hourly rate for all hours worked in excess of forty per week.

3. The County regularly paid Plaintiffs and other similarly situated, non-exempt employees, including current and former employees holding the title of Deputy, Sergeant, Investigator, Senior Investigator, and First Sergeant at the promised rate of pay, undercalculating the hourly rate of pay of Plaintiffs and other similarly situated, non-exempt employes by dividing their promised annual salaries by the incorrect number of working days—261, instead of 249 (and 262, instead of 250 in a leap year)—as provided for in the Collective Bargaining Agreements ("CBA"s) governing the terms of employment between employees at the PCSD holding the titles of Deputy, Sergeant, Investigator, Senior Investigator, and First Sergeant and the County.

4. The County's undercalculation of Plaintiffs' and other similarly situated, non-exempt employees' base rate of pay further resulted in the County's undercalculation of their overtime rate of pay, which should have been no less than one-and-one-half (1 ½) times their promised base rates of pay, resulting in a failure to pay overtime wages to Plaintiffs and other similarly situated, non-exempt employees who worked more than 40 hours in any workweek.

5. The County further failed to pay Plaintiffs and other similarly situated, non-exempt employees at all for the 15-minute briefing period prior to each shift that Plaintiffs and other similarly situated, non-exempt employees were required to be present and performing work.

6. Additionally, the County failed to pay Hunsberger, along with other similarly situated, non-exempt employees holding the title of Investigator and Senior Investigator, any wages for the time they spent "on-call".

7. The County also failed to maintain an accurate record keeping of hours worked by Plaintiffs and similarly situated, non-exempt employees.

8. The County has systematically and repeatedly ignored the requirements of the FLSA. Hunsberger, Kraisky, and Osika, on behalf of themselves and similarly situated employees,

seek relief for the County's unlawful actions, including compensation for unpaid overtime wages at the promised rate of pay and for all hours worked liquidated damages, statutory damages, pre- and post-judgment interest, and attorneys' fees and costs, pursuant to the FLSA.

**JURISDICTION AND VENUE**

9. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331, 1337 and 1343.

10. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b), because the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

11. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

**PROCEDURAL PRECURSORS**

12. On April 16, 2025, Plaintiffs served the County with a Notice of Claim.

13. On September 2, 2025, the County conducted an examination of each Plaintiff, pursuant to GML § 50-h.

14. More than 30 days has elapsed since the County conducted the GML § 50-h examination of Plaintiffs, and the claim has not been adjusted or paid.

**THE PARTIES**

**Plaintiff Daniel Hunsberger**

15. Hunsberger was and is a resident of Putnam County, New York.

16. From approximately January 23, 2006, to the present, the County has employed Hunsberger continuously in several law enforcement roles.

17. Since 2017, Hunsberger has held the title of Investigator at the PCSD.

18. At all times relevant to this action, Hunsberger was and is an employee of the County within the meaning of the FLSA.

**Plaintiff Matthew Kraisky**

19. Kraisky was and is a resident of Dutchess County, New York.

20. From approximately April 1, 2015, to the present, the County has employed Kraisky continuously.

21. From his hire until September 5, 2021, Kraisky held the title of Deputy.

22. On September 6, 2021, Kraisky was promoted to Sergeant—the title he currently holds at the PCSD.

23. At all times relevant to this action, Kraisky was and is an employee of the County within the meaning of the FLSA.

**Plaintiff Kevin Osika**

24. Osika was and is a resident of Putnam County, New York.

25. From approximately January 4, 2016, to the present, the County has employed Osika continuously.

26. For the duration of his employment with the County, Osika has held the title of Deputy at the PCSD.

27. At all times relevant to this action, Osika was and is an employee of the County within the meaning of the FLSA.

**Defendant The County of Putnam**

28. The County was and is a municipal corporation organized and existing under the laws of the State of New York.

29. At all times relevant to this action, the County was and is a municipal entity of the State of New York authorized to organize and maintain departments responsible for enforcing the law within the County.

30. At all times relevant to this action, the PCSD is a department of the County that provides primary law enforcement services for the County.

31. The County authorizes and empowers the PCSD to perform law enforcement functions for the County, including the investigation and enforcement of criminal offenses and traffic infractions occurring within the County.

32. To carry out the PCSD's mission, the County employs law enforcement officers organized within the PCSD in a hierarchical structure according to rank.

33. PCSD officers holding the titles of Deputy, Sergeant, Investigator, Senior Investigator, and First Sergeant—including Plaintiffs—are non-exempt employees of the County employed to carry out law enforcement functions on behalf of the County.

34. At all times relevant to this action, the County was an employer of Plaintiffs within the meaning of the FLSA.

35. At all times relevant to this action, Plaintiffs were employees of the County within the meaning of the FLSA.

## THE COLLECTIVE BARGAINING AGREEMENTS AND THE COUNTY'S PAY PRACTICES

36. At all times relevant to this action, the terms and conditions of the employment of PCSD officers holding the titles of Deputy, Sergeant, Investigator, Senior Investigator, and First Sergeant—including Plaintiffs—are governed by CBAs entered into between the County and their union—the Putnam County Sheriff's Department Police Benevolent Association, Inc. (the "PBA").

37. At all times relevant to this action, the applicable CBA states that all officers work an eight hour tour of duty.

38. At all times relevant to this action, the applicable CBA states that all officers must report for work 15 minutes prior to the commencement of their tour of duty, to conduct briefing and a head count.

39. At all times relevant to this action, the applicable CBA states that the officers' standard work year consists of 249 work days (250 in a leap year) inclusive of holidays, composed of a weekly schedule of either five days on and two days off, or four days on and two days off, plus five additional "option" days per year, scheduled at the County's discretion.

40. At all times relevant to this action, the applicable CBA states that the officers shall be paid overtime at the rate of time and one-half "for all time worked in excess of the regularly scheduled working hours".

41. At all times relevant to this action, the applicable CBA provides for an annual salary for each officer composed of a base salary for grade (50 for Deputies, 51 for Sergeants and Investigators, or 52 for Senior Investigators and First Sergeants) and (for Deputies only) step (1-5), plus an amount added to the salary for (if attained) educational credits (in increments of 30 credits, up to 150 credits), longevity (for 7, 12, 17, and 20 years of continuous service), and an EMT stipend (training level I, II, and IV).

42. At all times relevant to this action, the County pays officers on a bi-weekly basis, with the pay period composed of two consecutive Saturday through Friday workweeks.

43. At all times relevant to this action, the County pays each officer overtime for hours they work over five 8-hour tours (40 tour hours), exclusive of the 15-minute briefing period each

officer must work prior to each shift, and exclusive of "on-call" hours for which officers are not actually called in.

44. At all times relevant to this action, the County calculates each officer's base hourly rate of pay by dividing his or her annual salary by 2,088 hours (8 scheduled hours per shift, multiplied by 261 days) in a standard year, and 2,096 hours (8 scheduled hours per shift, multiplied by 262 days) in a leap year.

45. At all times relevant to this action, the County calculates each officer's overtime hourly rate of pay by dividing his or her annual salary by 2,088 hours (8 scheduled hours per shift, multiplied by 261 days) in a standard year, and 2,096 hours (8 scheduled hours per shift, multiplied by 262 days) in a leap year, then multiplying that rate by 1.5.

46. At all times relevant to this action, in lieu of overtime wages, officers may elect to take compensation for overtime hours worked in compensatory time ("comp time"), accrued at 1.5 hours for every overtime hour worked.

47. The officers may bank "comp time" hours (up to a maximum of 340 hours, from 2023 to the present) and either use "comp time" hours as paid time off or redeemed for cash payment.

48. Whether used as paid time off or redeemed for cash payment, the County pays "comp time" at the officer's base hourly rate of pay for each "comp time" hour.

49. At all times relevant to this action, the officers' base hourly rate of pay should be calculated based upon 249 workdays in a standard year (250 in a leap year), as provided for in the CBA.

50. As a result, at all times relevant to this action, all compensation paid by the County to the officers based upon the officers' base rates of pay—including their overtime pay and "comp time" used or redeemed—was undercalculated.

51. On multiple occasions, officers—including Hunsberger—complained to County officials that the County was undercalculating their base hourly rate of pay by applying 261 workdays in a standard year (262 in a leap year) rather than 249 workdays in a standard year (250 in a leap year) provided for in the CBA, resulting in an undercalculation of their rates of pay.

52. In response to the officers' complaints, County officials provided conflicting explanations for the additional twelve (12) days used by the County in its calculation of the officers' base rates of pay, alternatively describing those days as "holidays" or "training days".

53. Although through the applicable CBAs and the officers' complaints, the County was on notice that they should have been calculating officers' base rates of pay dividing the officers' annual salary by 1,992 hours in a standard year (8 scheduled hours per shift, times 249 workdays) and by 2,000 hours in a leap year (8 scheduled hours per shift, times 250 work days), the County continued (and continues) to undercalculate their base rates of pay (and, thus, overtime rates), by incorrectly including the additional 12 days.

54. At all times relevant to this action, the County did not pay its officers at all for the 15-minute briefing period each officer is required to be present and performing work prior to the commencement of each shift, including (but not limited to) receiving briefings from the prior shift regarding the incidents and events occurring during the prior shift.

55. At all times relevant to this action, during scheduled periods, the County required Investigators and Senior Investigators to remain available—"on-call"—for urgent assignments outside their normal working hours.

56. At all times relevant to this action, the County failed to pay any wages to officers holding the title of Investigator and Senior Investigator, for the time they spent "on-call", unless they were actually called out to work.

57. At all times relevant to this action, during scheduled "on-call" periods, the County requires Investigators and Senior Investigators to answer their phones and respond to calls immediately.

58. At all times relevant to this action, when they are "on-call", Investigators and Senior Investigators were and are called—and required to report—frequently.

59. At all times relevant to this action, when called during an "on-call" shift, Investigators and Senior Investigators are required to arrive to either headquarters or the dispatched location in uniform, clean, and ready to work "without unnecessary delay" (enforced as within approximately 30 minutes) of receiving the call to report, irrespective of travel time.

60. At all times relevant to this action, if Investigators and Senior Investigators fail to answer their phones or fail to timely report when they are on call, they are subject to discipline.

61. At all times relevant to this action, Investigators and Senior Investigators, when "on-call", are not free to use their time for their own benefit.

62. As a result, at all times relevant to this action, the County engaged Investigators and Senior Investigators to wait but did not pay them for this compensable work.

63. At all times relevant to this action, the County failed to compensate Investigators and Senior Investigators for an approximate average of 25-30 hours per week—and as many as 90 hours per week—of "on-call" time.

**FLSA COLLECTIVE ALLEGATIONS**

64. Plaintiffs bring claims for relief as a collective action pursuant to the FLSA, 29 U.S.C § 216(b), on behalf of themselves and all non-exempt law enforcement employees of the County at the PCSD, including employees holding the title of Deputy, Sergeant, Investigator, Senior Investigator, and First Sergeant, employed by the County at any time three years prior to the filing of this action through the entry of judgment in this action (the "FLSA Collective").

65. The FLSA Collective consists of approximately one hundred similarly situated current and former non-exempt employees of the County, who have been victims of the County's common policy and practices that have violated their rights under the FLSA, *inter alia*, by denying them overtime pay and other monies.

66. As part of their regular business practices, the County has intentionally, willfully, repeatedly, and in bad faith harmed Plaintiffs and the FLSA Collective by engaging in a pattern, practice, and/or policy of violating the FLSA. This policy and pattern or practice includes, *inter alia*,

a. Failing to pay Plaintiffs and the FLSA Collective the proper overtime pay for all hours worked over forty per week; and

b. Failing to keep and maintain accurate records reflecting all the hours worked by Plaintiffs and the FLSA Collective.

67. The County has engaged in this unlawful conduct pursuant to a policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA.

68. The County's unlawful conduct has been intentional, willful, in bad faith and has caused damage to Plaintiffs and the FLSA Collective.

69. The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to the County, are readily identifiable by the County, and are locatable

through the County's records, which the County is required to maintain pursuant to the FLSA. These similarly situated employees should be notified of and allowed to opt into this action pursuant to 29 U.S.C. § 216(b).

70. Plaintiffs and the FLSA Collective have all been injured in that they have been under-compensated due to the County's common policies, practices, and patterns of conduct. The compensation promised by the County to Plaintiffs and the FLSA Collective is governed by the terms of the CBAs entered into between the County and their union—the PBA.

## PLAINTIFFS' FACTUAL ALLEGATIONS

**Plaintiff Hunsberger**

71. On or around January 23, 2006, Hunsberger commenced employment with the County.

72. Since 2017, Hunsberger has held the title of Investigator at the PCSD, and he currently holds that title.

73. As an Investigator at the PCSD, Hunsberger is a non-exempt law enforcement official, entitled to be compensated according to the terms of the applicable CBAs.

74. For the duration of his employment with the County, Hunsberger has satisfactorily performed his duties and responsibilities.

75. From at least 2019 through the present, for approximately 5-6 shifts per week, the County has failed to pay Hunsberger for all hours worked by failing to pay him at all for a 15-minute briefing period before each shift he worked (other than when he worked a double-shift, in which case this underpayment applied only to the first shift).

76. From at least 2019 through the present, the County has failed to pay Hunsberger his promised wages by incorrectly dividing his total annual salary by 2,088 working hours in a

standard year (instead of 1992 working hours) and 2,096 working hours in a leap year (instead of 2,000 working hours).

77. For example, in 2024, Hunsberger was an Investigator (Grade 51), entitled to a base salary of $120,704.00, plus $165.00 for 30 education credits, and $1,950.00 for at least 17 years of longevity, resulting in a total annual salary of $122,819.00.

78. Because 2024 was a leap year, Hunsberger was entitled to a base hourly rate of pay of his annual salary—$122,819.00—divided by 2,000 working hours (eight hours per working day, 250 working days in the year), equaling $61.4095. Hunsberger's 2024 overtime hourly rate should have been $92.1143—1.5 times his base hourly rate.

79. However, in 2024, the County calculated Hunsberger's base hourly rate of pay at $58.5969, by dividing Hunsberger's annual salary by 2,096 working hours (eight hours per working day, 262 working days in the year). As a result, the County undercalculated Hunsberger's hourly overtime rate as $87.8954, multiplying $58.5969 by 1.5.

80. As reflected on Hunsberger's bi-weekly paystub for the consecutive workweeks ending December 20, 2024, the County paid Hunsberger at a rate of $87.8954 per hour for four overtime hours, resulting in a total of $351.58.

81. Had the County correctly calculated and applied Hunsberger's overtime hourly rate—$92.1143—the County should have paid Hunsberger a total of $368.46 for the four overtime hours it recorded him working (exclusive of the 15-minute briefing periods and "on-call" time) for the consecutive workweeks ending December 20, 2024.

82. This undercalculation applies to each year of Hunsberger's employment with the County, from at least 2019 to the present.

83. In 2019, exclusive of "on-call" time and the 15-minute unpaid briefing time, Hunsberger worked approximately 462 hours of overtime.

84. In 2019, Hunsberger's total annual salary was $107,058.

85. In 2020, exclusive of "on-call" time and the 15-minute unpaid briefing time, Hunsberger worked approximately 402 hours of overtime.

86. In 2020, Hunsberger's total annual salary was $109,692.

87. In 2021, exclusive of "on-call" time and the 15-minute unpaid briefing time, Hunsberger worked approximately 292 hours of overtime.

88. In 2021, Hunsberger's total annual salary was $112,392.

89. In 2022, exclusive of "on-call" time and the 15-minute unpaid briefing time, Hunsberger worked approximately 183 hours of overtime.

90. In 2022, Hunsberger's total annual salary was $115,160.

91. In 2023, exclusive of "on-call" time and the 15-minute unpaid briefing time, Hunsberger worked approximately 205 hours of overtime.

92. In 2023, Hunsberger's total annual salary was $119,588.

93. In 2024, exclusive of "on-call" time and the 15-minute unpaid briefing time, Hunsberger worked approximately 138 hours of overtime.

94. In 2024, Hunsberger's total annual salary was $122,819.

95. In 2025, exclusive of "on-call" time and the 15-minute unpaid briefing time, Hunsberger worked approximately 338 hours of overtime.

96. In 2025, Hunsberger's total annual salary was $126,138.

97. In 2026, Hunsberger anticipates the unlawful compensation scheme described herein will continue, resulting in uncompensated overtime hours exclusive of "on-call" time and the 15-minute unpaid briefing time.

98. In 2026, Hunsberger's total annual salary is $130,309.

99. On November 17, 2024, Hunsberger emailed several County officials, including Kathy Dean-Frick ("Dean-Frick"), questioning the County's (conceptually identical) use of 261 working days for the rate of accrual of vacation hours, instead of the 249 working days provided for in the CBA (for standard, non-leap years).

100. On November 17, 2024, Dean-Frick responded to Hunsberger by explaining the County's use of 261 work days in its calculation as "249 plus training days".

101. The applicable CBA does not contain any reference to "training days"—or any similar concept—in describing the number of annual working days or in the context of calculating rates (such as accrual rates or rates of pay) applicable to officers' compensation.

102. Hunsberger's complaint is one of several lodged by himself and other PCSD officers to County officials regarding the County's failure to properly compensate them.

103. Despite periodic complaints by PCSD officers, the County has failed to take any action to rectify their unlawful pay practices.

104. Additionally, from at least 2019 to the present, Hunsberger is scheduled to be "on call" each week, for an approximately average of 25-30 hours per week, and some weeks as many as 90 hours, outside of his scheduled working hours.

105. During "on call" periods, Hunsberger is required to accept and respond to any call—either to headquarters or to the site of an incident, depending on the nature of the call—

within approximately 30 minutes, clean, in uniform, and ready to work, or he is subject to discipline.

106. As these calls usually entail an urgent—and potentially dangerous—situation, an immediate response is required.

107. At all times relevant to this action, Hunsberger resides within the County, an approximately 20-minute drive from the PCSD headquarters in normal traffic and weather conditions.

108. When "on-call", Hunsberger cannot leave his house at any distance, as returning home, changing into his uniform, and driving to the PCSD headquarters would exceed his approximate 30-minute time window.

109. Additionally, because cell service is unreliable, when "on-call" Hunsberger must be connected to a Wi-Fi network or at his home, where he has a landline on which the County can reach him.

110. As a result, when "on-call", Hunsberger is unable to perform errands outside his house.

111. Further, because he is required to respond to a call clean and in uniform, when "on-call", Hunsberger is unable to perform household errands such as painting, staining his deck, or strenuous work.

**Plaintiff Kraisky**

112. On or around April 1, 2015, Kraisky commenced employment with the County.

113. From the commencement of his employment with the County until September 5, 2021, Kraisky held the title of Deputy.

114. On September 6, 2021, Kraisky was promoted to Sergeant at the PCSD—his current title.

115. As a Sergeant at the PCSD, Kraisky is a non-exempt law enforcement official, entitled to be compensated according to the terms of the applicable CBAs.

116. For the duration of his employment with the County, Kraisky has satisfactorily performed his duties and responsibilities.

117. From at least 2019 through the present, for approximately 5-6 shifts per week, the County has failed to pay Kraisky for all hours worked by failing to pay him at all for a 15-minute briefing period before each shift he worked (other than when he worked a double-shift, in which case this underpayment applied only to the first shift).

118. From at least 2019 through the present, the County has failed to pay Kraisky his promised wages by incorrectly dividing his total annual salary by 2,088 working hours in a standard year (instead of 1992 working hours) and 2,096 working hours in a leap year (instead of 2,000 working hours).

119. For example, in 2024, Kraisky was a Sergeant (Grade 51), entitled to a base salary of $120,704.00, plus $825.00 for 150 education credits, $1,100.00 for at least 7 years of longevity, and $2,000.00 for an EMT Stipend (Level I) resulting in a total annual salary of $124,629.00.

120. Because 2024 was a leap year, Kraisky was entitled to a base hourly rate of pay of his annual salary—$124,629.00—divided by 2,000 working hours (eight hours per working day, 250 working days in the year), equaling $62.3145. Kraisky's 2024 overtime hourly rate should have been $93.4718—1.5 times his base hourly rate.

121. However, in 2024, the County calculated Kraisky's base hourly rate of pay at $59.4604 by dividing Kraisky's annual salary by 2,096 working hours (eight hours per working

day, 262 working days in the year). As a result, the County undercalculated Kraisky's hourly overtime rate as $89.1906, multiplying $59.4604 by 1.5.

122. As reflected on Kraisky's bi-weekly paystub for the consecutive workweeks ending December 20, 2024, the County paid Kraisky at a rate of $89.1906 per hour for fifteen (15) overtime hours, resulting in a total of $1,337.85.

123. Had the County correctly calculated and applied Kraisky's overtime hourly rate—$93.4718—the County should have paid Kraisky a total of $1,402.08 for the fifteen (15) overtime hours it recorded him working (exclusive of the 15-minute briefing periods) for the consecutive workweeks ending December 20, 2024.

124. This undercalculation applies to each year of Kraisky's employment with the County, from at least 2019 to the present.

125. In 2019, exclusive of the 15-minute unpaid briefing time, Kraisky worked approximately 603.75 hours of overtime.

126. In 2019, Kraisky's total annual salary was $98,964.

127. In 2020, exclusive of the 15-minute unpaid briefing time, Kraisky worked approximately 520.33 hours of overtime.

128. In 2020, Kraisky's total annual salary was $101,400.

129. In 2021, exclusive of the 15-minute unpaid briefing time, Kraisky worked approximately 611.50 hours of overtime.

130. In 2021, Kraisky's total annual salary was $113,552.

131. In 2022, exclusive of the 15-minute unpaid briefing time, Kraisky worked approximately 624.50 hours of overtime.

132. In 2022, Kraisky's total annual salary was $116,320.

133. In 2023, exclusive of the 15-minute unpaid briefing time, Kraisky worked approximately 786 hours of overtime.

134. In 2023, Kraisky's total annual salary was $121,398.

135. In 2024, exclusive of the 15-minute unpaid briefing time, Kraisky worked approximately 581.25 hours of overtime.

136. In 2024, Kraisky's total annual salary was $124,629.

137. In 2025, exclusive of the 15-minute unpaid briefing time, Kraisky worked approximately 637.75 hours of overtime.

138. In 2025, Kraisky's total annual salary was $127,948.

139. In 2026, Kraisky anticipates the unlawful compensation scheme described herein will continue, resulting in uncompensated overtime hours exclusive of the 15-minute unpaid briefing time.

140. In 2026, Kraisky's total annual salary is $131,669.

**Plaintiff Osika**

141. On or around January 4, 2016, Osika commenced employment with the County.

142. For the duration of his employment with the County, Osika has held the title of Deputy at the PCSD, and he currently holds that title

143. As a Deputy at the PCSD, Osika is a non-exempt law enforcement official, entitled to be compensated according to the terms of the applicable CBAs.

144. For the duration of his employment with the County, Osika has satisfactorily performed his duties and responsibilities.

145. From at least 2019 through the present, for approximately 5-6 shifts per week, the County has failed to pay Osika for all hours worked by failing to pay him at all for a 15-minute

briefing period before each shift he worked (other than when he worked a double-shift, in which case this underpayment applied only to the first shift).

146. From at least 2019 through the present, the County has failed to pay Osika his promised wages by incorrectly dividing his total annual salary by 2,088 working hours in a standard year (instead of 1992 working hours) and 2,096 working hours in a leap year (instead of 2,000 working hours).

147. For example, in 2024, Osika was a Deputy (Grade 50, Step 5), entitled to a base salary of $110,106.00, plus $495.00 for 90 education credits, and $1,100.00 for at least 7 years of longevity, resulting in a total annual salary of $111,701.00.

148. Because 2024 was a leap year, Osika was entitled to a base hourly rate of pay of his annual salary—$111,701.00—divided by 2,000 working hours (eight hours per working day, 250 working days in the year), equaling $55.8505. Osika's 2024 overtime hourly rate should have been $83.7758—1.5 times his base hourly rate.

149. However, in 2024, the County calculated Osika's base hourly rate of pay at $53.2925 by dividing Osika's annual salary by 2,096 working hours (eight hours per working day, 262 working days in the year). As a result, the County undercalculated Osika's hourly overtime rate as $79.9388, multiplying $53.2925 by 1.5.

150. As reflected on Osika's bi-weekly paystub for the consecutive workweeks ending November 8, 2024, the County paid Osika at a rate of $79.9388 per hour for one overtime hour, resulting in a total of $79.94.

151. Had the County correctly calculated and applied Osika's overtime hourly rate—$83.7758—the County should have paid Osika a total of $83.78 for the one overtime hour it

recorded him working (exclusive of the 15-minute briefing periods) for the consecutive workweeks ending November 8, 2024.

152. This undercalculation applies to each year of Osika's employment with the County, from at least 2019 to the present.

153. In 2019, exclusive of the 15-minute unpaid briefing time, Osika worked approximately 512 hours of overtime.

154. In 2019, Osika's total annual salary was $80,403.

155. In 2020, exclusive of the 15-minute unpaid briefing time, Osika worked approximately 712 hours of overtime.

156. In 2020, Osika's total annual salary was $99,041.

157. In 2021, exclusive of the 15-minute unpaid briefing time, Osika worked approximately 669 hours of overtime.

158. In 2021, Osika's total annual salary was $101,505.

159. In 2022, exclusive of the 15-minute unpaid briefing time, Osika worked approximately 312 hours of overtime.

160. In 2022, Osika's total annual salary was $104,030.

161. In 2023, exclusive of the 15-minute unpaid briefing time, Osika worked approximately 217 hours of overtime.

162. In 2023, Osika's total annual salary was $108,754.

163. In 2024, exclusive of the 15-minute unpaid briefing time, Osika worked approximately 116 hours of overtime.

164. In 2024, Osika's total annual salary was $111,701.

165. In 2025, exclusive the 15-minute unpaid briefing time, Osika worked approximately 236.25 hours of overtime.

166. In 2025, Osika's total annual salary was $114,729.

167. In 2026, Osika anticipates the unlawful compensation scheme described herein will continue, resulting in uncompensated overtime hours exclusive of the 15-minute unpaid briefing time.

168. In 2026, Osika's total annual salary is $118,123.

169. Since at least 2019 through the present, the County failed to pay Plaintiffs for all hours worked.

170. Since at least 2019 through the present, the County failed to pay Plaintiffs their promised pay for all hours worked.

171. Since at least 2019 through the present, the County failed to pay Plaintiffs the one-and-one-half (1 ½) overtime premium rate for each hour they worked beyond 40 hours in a week.

172. Since at least 2019 through the present, the County failed to record all hours worked by Plaintiffs, including their pre-shift "briefing" time and Hunsberger's "on-call" time.

173. The County's violations of the FLSA as relating to Plaintiffs' employment with the County have been willful.

## FIRST CAUSE OF ACTION
**Fair Labor Standard Act – Unpaid Overtime**
**(On Behalf of Plaintiffs and the FLSA Collective)**

174. Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

175. Plaintiffs were employees of the County within the meaning of 29 U.S.C § 203(e).

176. The County is an employer within the meaning of 29 U.S.C § 203(d) and employed Plaintiffs.

177. The County was required to pay Plaintiffs and the FLSA Collective one and one-half (1 ½) times the regular rate of pay (inclusive of the promised rate of pay) for all hours worked in excess of 40 hours in a workweek, pursuant to of 29 U.S.C § 207.

178. The County failed to pay Plaintiffs and the FLSA Collective the overtime wages to which they were entitled under the FLSA.

179. The County willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiffs and the FLSA Collective overtime wages.

180. The County's violations of the FLSA described above have been willful, and therefore, a three year statute of limitations applies to this matter pursuant to the FLSA, 29 U.S.C. § 255(a).

181. As a result of the County's willful violations of the FLSA, Plaintiffs and the FLSA Collective are entitled to recover from the County their unpaid overtime wages, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to 29 U.S.C. § 216(b).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs individually, and on behalf of the FLSA Collective, respectfully request that this Court grant the following relief:

A. Designating this action as a collective action on behalf of the FLSA Collective and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated non-exempt employees and appointing Plaintiffs and their counsel to represent the FLSA Collective. Such notice shall inform them that this civil action has been filed, the nature of the action, and their right to join this lawsuit if they believe they were denied proper wages;

B. An order tolling the statute of limitations;

C. A declaratory judgment that the practices complained of herein are unlawful under applicable federal law;

D. Declaring that the County has violated the overtime provisions of the FLSA;

E. Declaring that the County's violations of the FLSA were willful;

F. Awarding Plaintiffs and the FLSA Collective unpaid overtime wages;

G. Awarding Plaintiffs and the FLSA Collective liquidated and/or punitive damages in amount equal to the total amount of wages found to be due, pursuant to the FLSA;

H. Awarding Plaintiffs and the FLSA Collective reasonable attorney's fees, costs and expenses of the action under the FLSA;

I. Awarding Plaintiffs and the FLSA Collective pre-judgment and post-judgement interest under the FLSA; and

J. Awarding such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demands a trial by jury.

Dated: May 1, 2026
Newark, New Jersey

**AKIN & SALAMAN P.C.**

*/s/ Justin Ames*

______________________________
Justin Ames, Esq.
One Gateway Center, Suite 2600
Newark, NJ 07102
Telephone: (201) 366-3650
Email: justin@akinlaws.com
*Attorneys for Plaintiffs*